**The STATE of Ohio, Appellant,**

**v.**

**HAGIE, Appellee.**

[Cite as *State v. Hagie* (1991), 74 Ohio App.3d 450.]

Court of Appeals of Ohio,
Miami County.

No. 90–CA–37.

Decided June 5, 1991.

*Phillip D. Hoover,* Prosecuting Attorney, for appellant.

*Robert J. Huffman, Jr.,* for appellee.

---

BROGAN, Judge.

This is an appeal brought by the Prosecuting Attorney of Troy, Ohio, pursuant to Crim.R. 12(J) from an order of the trial court suppressing evidence obtained by a Miami County deputy after stopping the appellee, Robert E. Hagie, Jr.

Hagie was charged in the Miami County Municipal Court with driving while under suspension in violation of R.C. 4507.02(B). The trial court granted Hagie's pretrial motion to suppress the evidence that he was driving under suspension.

Deputy Thomas Eyler, a sixteen-year veteran of the Miami County Sheriff's Office, testified that on May 9, 1990 at 3:00 a.m. he was operating his patrol cruiser east on Farrington Road when he observed a vehicle traveling westbound; the vehicle appeared not to have front or rear license plates. Eyler said he stopped his vehicle and turned around and followed the vehicle. Eyler said he caught up with the vehicle although it was traveling "pretty fast." When Eyler came within one hundred yards of the vehicle, he turned his overhead lights on his cruiser.

Eyler said the vehicle stopped and the driver pulled over to the side of the road. Eyler said he drove his cruiser to within fifteen to twenty feet of the defendant's vehicle. Eyler said he then called the police dispatcher and "advised them that I was stopping the vehicle and he gave the description of the vehicle and advised there was no visible registration." Eyler stated he didn't recall seeing a temporary license tag on the rear of the defendant's vehicle although his cruiser's headlights illuminated the area. Specifically, Eyler testified he could not say whether there was a temporary tag on the rear of the defendant's vehicle. He said his attention was focused more on the defendant who then exited his vehicle and began walking over into the opposite lane of traffic.

Eyler said he then exited his cruiser and approached the defendant and asked him for his operator's license. He said Hagie told him he did not have a driver's license. Eyler admitted on cross-examination that he must at some point have seen a temporary tag as he noted it on the citation given to Hagie for the driving under suspension violation and he permitted a relative to come and drive the defendant's vehicle away. Eyler was never able to remember the location of the temporary tag which he noted on the traffic citation.

Prior to ruling on the defendant's motion, the trial court noted:

"THE COURT: You see, Mr. Huffman, I am just a whisker away from granting your Motion, but what bothers me—obviously that tag was somewhere, but what bothers me is, where was it? It may not have been in the back window or on the back plate. It may have been on the back seat or the back floor, that the officer may not have had an opportunity to observe it when he stopped it. See what I mean?

"MR. HUFFMAN: Yes, Your Honor, I made my preliminary motion at this point after the close of the State's evidence, simply because it was my opinion based on the—solely on the officer's testimony there was no evidence as to

whether it was or wasn't and have not proved that anything was more probable than not that a crime had been committed.

"If the court wishes us to proceed, the Defendant is more than willing to take the stand—

"THE COURT: Well, if you do that then you're going to put this thing at issue, and then we'll dispose of the case. We're probably dispose of this case if you put your man on the stand, then we'll just, you know,—it will probably come out guilty or not guilty. What else is there to here from?

"MR. HOOVER: If I may, Your Honor, even if the Defendant is put on the stand and the Defendant discloses to this Court where this tag is displayed, or where this tag was displayed, that has no bearing on this motion to suppress for the simple reason it was only the issue in this officer's mind at the time he asked the question, as to whether or not he had any knowledge that would invalidate the probable cause for the stop. There is no testimony from this officer, and this officer in this case, in this suppression hearing, is the only person that can testify as to this fact, as to whether or not the probable cause ceased to exist. This officer cannot testify truthfully under oath that at anytime after he stopped this vehicle and prior to him asking the Defendant whether or not he had a driver's license, that reason for the probable cause for the stop never ceased to exist."

The defendant did not testify at the hearing. The trial court sustained the defendant's motion because he felt that a sixteen-year veteran police officer should have observed whether there was a license tag on the defendant's rear window or on the location normally used for attachment of a license plate. The court stated the officer had a duty to look before he stopped the defendant for the violation.

In *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, the Ohio Supreme Court held that although a motorist may be stopped on suspicion he is operating a vehicle without license tags, once the officer determines the motorist possesses valid tags no further detention may be conducted and any evidence collected during the unlawful detention must be suppressed.

The state bears the burden of proving that the stopping of the defendant was justified and the resultant detention was reasonable.

Officer Eyler was justified in stopping the appellee's vehicle. Unlike *Chatton,* there is no evidence that Officer Eyler immediately noticed the appellee's vehicle bore the appropriate temporary license tag. Indeed, the evidence is to the contrary, and Eyler's attention seems to have been directed to the appellee who had exited his vehicle and walked into the opposite lane of

traffic. The appellee's admissions made to Officer Eyler during this reasonable period of detention are admissible. The appellant's assignment of error is sustained. This matter will be reversed and remanded for further proceedings.

*Judgment accordingly.*

WILSON and GRADY, JJ., concur.